UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SANDRA K DEHART, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| CAROLYN W. COLVIN Acting Commissioner of the Social Security Administration, | ) ) ) No. 1:12-cv-00861-MJD-SEB |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Sandra DeHart requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d). For the reasons set forth below, the decision of the Commissioner is **REVERSED**.[1]

## I.   Procedural History

DeHart filed an application for DIB on October 8, 2009, alleging an onset of disability of April 23, 2009. DeHart's applications were denied initially on March 31, 2010, and on reconsideration on May 7, 2010. DeHart requested a hearing, which was held on March 15, 2011 before Administrative Law Judge William Manico ("ALJ"). The Appeals Council denied

---

[1] The parties consented to the Magistrate Judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Any objections to or appeal of this decision must be made directly to the Court of Appeals in the same manner as an appeal from any other judgment of a district court. 28 U.S.C. § 363(c)(3).

1

DeHart's request for review on April 20, 2012, making the ALJ's decision the final decision for purposes of judicial review. DeHart filed her Complaint with this Court on June 21, 2012.

## II.     Factual Background and Medical History

Sandra DeHart worked as a Laborer in a warehouse for 30 years. In 2002, an MRI of the lumbar spine revealed that DeHart had spondylosis in her lower back. An MRI of the cervical spine conducted in 2007 also revealed spondylosis, most severe at C6-7, with moderate to severe foraminal narrowing. DeHart sought treatment from Dr. Michael Kaveney in February 2008 who opined that her shoulder pain, numbness, and tingling appeared to be caused by the cervical spondylosis.

In October 2008, DeHart met with Dr. Patrick Matoole for a neurologic consultation. Dr. Matoole diagnosed DeHart with depression, insomnia, chronic obstructive pulmonary disease ("COPD"), and degenerative disc disease. Also in October 2008, an MRI of the cervical spine indicated that DeHart had cervical neuralgia.

In December 2008, DeHart sought treatment at the Franciscan Spine Center for neck pain, bilateral hand numbness upon walking, and pain that shoots through the eyes.

In January 2009, DeHart received injections at left C4-5, 5-6, and 6-7 to treat her cervical spondylosis.

 In February 2009, Dehart reported to Dr. Michael Day that she continued to have left shoulder pain, pain in the neck, and numbness and tingling the left hand. Dr. Day observed a limited range of motion in the neck and had elements of cervical radiculopathy and spondylosis.

Dr. Day evaluated DeHart again in June 2009 and noted that she continued to have pain in the neck and limited range of motion. Dr. Day also diagnosed DeHart with cervical radiculopathy.

In August 2009, Dr. Matoole noted that DeHart continued to have decreased range of motion. An MRI of the cervical spine in October 2009 showed degenerative changes at several levels, most severe at C6-7.

Another MRI of the lumbar spine in December 2009 revealed moderate degenerative disc disease and mild bulging of discs.

In January 2010, DeHart continued to report left arm weakness with numbness and tingling, shoulder pain, and pain in her neck. She also received a nerve root injection for her left arm pain.

DeHart went for a neurosurgical consultation in March 2010 with Dr. Steven James. He concluded that DeHart had left C7 radiculopathy and recommended a cervical discectomy and fusion; the surgery was performed the following week.

An MRI of the lumbar spine in April 2009 showed mild to moderate multilevel degenerative change. From April to May 2010, x-rays and MRIs revealed post-operative degenerative changes in the spine. DeHart acknowledged that her neck and arm pain decreased, but her back pain persisted.

### III.  Applicable Standard

To be eligible for DIB, a claimant must have a disability under 42 U.S.C. § 423. Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent him from doing not only her previous work, but

any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed,

the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

## IV. The ALJ's Decision

The ALJ first determined that DeHart met the insured status requirements of the Act through December 31, 2014. Applying the five-step analysis, the ALJ found at step one that DeHart had not engaged in substantial gainful activity since the alleged onset date of April 23, 2009. At step two, the ALJ found that DeHart had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, shoulder pain, and COPD.

At step three, the ALJ determined that DeHart did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

The ALJ found that DeHart had the residual functional capacity ("RFC") to occasionally lift and/or carry (including upward pulling) 20 lbs; frequently lift and/or carry (including upward pulling) 10 lbs; push and/or pull (including operation of hand and/or foot controls) unlimited, other than as shown for lift and/or carry; stand and/or walk (with normal breaks) for a total of about 6 hours in an 8 hour workday; sit (with normal breaks) for a total of about 6 hours in an 8 hour workday; walk for 20 minutes at a time, but needs to be able to alternate between sitting and standing every half hour; engage in no repetitive overhead activity with either upper extremity; must avoid all exposure to extreme cold, extreme heat and extreme humidity; she must also avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. and hazards such as machinery, heights, etc.

At step four, the ALJ determined that DeHart was unable to perform any past relevant work. At step five, the ALJ determined that, considering DeHart's age, education, work experience and RFC, there were jobs that existed in the national economy that DeHart could perform. Therefore, the ALJ determined that DeHart was not disabled.

## V.  Discussion

The central issue in this matter is whether there is substantial evidence to support the ALJ's decision that DeHart was not disabled. *Dixon*, 270 F.3d at 1176. DeHart raises three arguments on review: 1) the ALJ failed to provide a sufficient analysis to support the conclusion that DeHart's impairments did not meet or equal a listed impairment at step three; 2) the ALJ erred in his RFC analysis; and 3) the ALJ posed an inadequate hypothetical to the vocational expert and thus failed to meet the Commissioner's step five burden to establish other work in the national economy that DeHart could perform.

DeHart first argues that the medical evidence shows that DeHart's spinal impairments equaled Listing 1.04 Disorders of the Spine and that the ALJ failed to address this in his decision. DeHart argues that the ALJ's deficient analysis, including a complete failure to mention any listing, is reversible error. The Court agrees. The ALJ's analysis at step three amounts to two sentences: "[a]lthough the undersigned has determined that claimant's impairments are severe, they do not meet or equal any of the listings set forth in the citation recited above. Without satisfying the aforementioned criteria, claimant can perform some work activities as delineated below in the RFC." [R. at 15.] This is the full extent of the ALJ's step three analysis. The Commissioner argues that the articulation requirement at step three is minimal and that failure to specifically mention a listing is not, by itself, grounds for remand. Defendant is correct in that failure to mention a listing does not alone provide a basis for remand.

*Rice v. Barnhart*, 384 F.3d 363, 369-70 (7th Cir. 2004). However, an ALJ's failure to do so "combined with a 'perfunctory analysis' may require a remind." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 20)06).

The Commissioner also argues that although the analysis did not take place at step three, DeHart's spinal impairments were nonetheless examined and analyzed in the RFC assessment. Although the ALJ discussed DeHart's medical records pertaining to her spinal impairments in the RFC analysis, the ALJ skipped a very crucial step by failing to compare the impairments to the listings. The RFC analysis does not provide a glimpse into whether the ALJ considered Listing 1.04 or any other listing.

The Commissioner nevertheless maintains that the burden is on the plaintiff to prove that she has a medically listed impairment. This is true; the burden is on DeHart to show that her impairments satisfy all of the criteria specified in the listing. *Ribaudo*, 458 F.3d at 583; *Maggard v. Apfel*, 167 F. 3d 376, 380 (7th Cir. 19)99). The Court finds that DeHart has provided prima facie medical evidence demonstrating that her spinal impairments meet or equal all the criteria for Listing 1.04. The regulations provide this description:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With :
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.04A. As recognized in the ALJ's decision, DeHart has the severe impairment of degenerative disc disease of the cervical and lumbar spine. [R. at 13.] The medical evidence also confirms significant nerve root compression, [R. at 560; see also R. at

7

432, 444 (diagnosis of cervical radiculopathy)[2]]. The medical record also demonstrates limitations in the motion of the spine [R. at 328, 333, 335, 339, 428, and 561]; muscle weakness [R. at 560 ("weakness in the left upper extremity")]; and sensory and reflex loss [R. at 260, 334, 338, 403, 407, and 411]. Because DeHart presented prima facie medical evidence that her impairments met or equaled a medical listing, it was the ALJ's responsibility to evaluate this evidence and determine whether the impairments met or equaled a listing.

The Commissioner also argues that DeHart failed to prove that she had limitation of motion and sensory/reflex loss for a continuous 12-month period. The regulations require that the *impairment* must last for a continuous 12 months, not the conditions characterizing the impairment. *See* 20 C.F.R. §§ 404.1505(a), 1509 (emphasis added). DeHart's impairment that purports to meet or equal the listing is degenerative disc disease with nerve root compression; everything else is a condition "characteriz[ing]" the nerve root compression. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.04A. Based on the ALJ's step two analysis, it appears the ALJ considered the duration requirement when determining whether DeHart's degenerative disc disease was a severe impairment. [*See* R. at 13-14 (determining that DeHart's nasal airway obstruction was not severe in part because "the evidence does not reflect a 12-month period of any limitation . . .").] The record shows - and the Commissioner does not challenge - that DeHart's degenerative disc disease is an impairment that has lasted for a continuous 12 months. Accordingly, the Commissioner's argument fails.

---

[2] "Cervical radiculopathy is the clinical description of pain and neurological symptoms resulting from any type of condition that irritates a nerve in the cervical spine (neck). . . When any nerve root in the cervical spine is irritated through compression or inflammation, the symptoms can radiate along that nerve's pathway into the arm and hand." Zinovy Meyler, *What is Cervical Radiculopathy*, Spine-Health, http://www.spine-health.com/conditions/neck-pain/what-cervical-radiculopathy (last visited June 21, 2013) (as recognized in *Ribaudo*, 458 F.3d at 584). Degenerative disc disease can cause cervical radiculopathy. *Id.*

With the exception of the Psychiatric Review Technique to determine whether DeHart's *mental* impairments met or equaled a listing, the Court also notes that there is nothing in the record to indicate that a doctor evaluated whether DeHart's physical impairments met or equaled a listing. The ALJ is required to consult a medical expert on the issue of medical equivalency. SSR 96-6p, 1996 WL 374180 (July 2, 1996). This requirement may be satisfied by documents completed by a state agency physician, *id.*, however none were submitted. Thus, the ALJ impermissibly played doctor by interjecting his own medical judgment without relying on medical evidence. Brennan-Kenyon v. Barnhart, 252 F. Supp. 2d 681, 696 (N.D. Ill. 2003) (citing Wilder v. Chater, 64 F.3d 335, 337-38 (7th Cir. 1995)). Therefore remand is warranted. On remand, the ALJ must seek out a medical expert to determine the issue of medical equivalency.

DeHart also challenges the ALJ's RFC analysis and step five determination. Although the Court found no error with the ALJ's RFC analysis or the determination at step five, the Court has determined that the findings are nonetheless tainted for failure to conduct a proper analysis at step three. Therefore, on remand, the ALJ is required to make a new RFC assessment and step five analyses, if necessary, after making a proper finding at step three.

## VI. CONCLUSION

For the reasons set forth above, the Commissioner's decision is **REVERSED** and this matter is **REMANDED** for further consideration in light of this decision. Plaintiff's Motion for Remand [Dkt. 17] is also **GRANTED**.

Date: 06/26/2013

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

9

Distribution:

Bridget L. O'Ryan
O'RYAN LAW FIRM
boryan@oryanlawfirm.com

Nicholas Thomas Lavella
O'RYAN LAW FIRM
nlavella@oryanlawfirm.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov